UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN HALL,

      Plaintiff,

v.                 Case No. 22-cv-901-pp

LT. BURGESS, *et al.*,

      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

  Stephen Hall, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 12, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $20.83. Dkt. No. 6. The court received that fee on September 14, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that he was a pretrial detainee confined at the Waukesha County Jail when the events described in the complaint occurred. Dkt. No. 1 at ¶3. He has sued Lieutenant Burgess; Correctional Officers Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow, Hedman, Buboltz, John Doe 1 and Reuter; Dr. Enid Trotman; Nurse Jean Humphrey; and Health Services Administrator Jim Mathews. Id. at 1.

The plaintiff alleges that on the morning of August 6, 2020, Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman escorted him to Pod 1 while he was wearing "manacles." Id. at ¶8. The plaintiff

3

states that when they arrived at the intake room in front of Stall 3, an officer asked him to remove his clothes. Id. at ¶9. When the plaintiff asked why, several officers allegedly slammed his head into the wall and threw him on the ground which resulted in his head hitting the concrete floor. Id. at ¶10. He states that as he lay on the ground with his hands cuffed behind his back, several officers "jumped on top of him, painfully striking him in the head, twisting and contorting his wrists, ankles, arms and legs." Id. at ¶11. The plaintiff alleges that one officer kneed him in the face and kneeled on his shoulder while another officer knelt on his neck, struck him in the head and yelled, "Stop resisting you dumb fucking nigger!" Id. at ¶12. According to the plaintiff, he screamed in pain and cried out that he could not breathe while simultaneously trying to catch his breath, as his clothes were cut and ripped off him. Id. at ¶13. He states that as the officers ripped his clothes off, his testicles and buttocks were painfully, harshly fondled and roughly spread without his consent. Id. at ¶14. The plaintiff alleges that he tried to tell the officers that he was in agonizing pain, but "it was to no avail." Id. at ¶15.

Later (the complaint does not say how much later), someone allegedly lifted the plaintiff off the floor and, while he was still handcuffed behind his back, placed him in a restraint chair. Id. at ¶16. The plaintiff alleges that as officers restrained him in the chair, he screamed, "You bastards dislocated my (expletive) shoulder! Get me outta these cuffs [sic]!" Id. at ¶17. Officers then allegedly placed the plaintiff, while in the restraint chair with his hands cuffed painfully behind his back and his ankles cuffed to the base of the chair, in a

4

holding cell. Id. at ¶18. He says that for several minutes he screamed that he needed medical attention; he says his shoulder felt as if it had been dislocated. Id. at ¶19.

The plaintiff alleges that after about an hour, Burgess, Mathews and two officers entered the room and asked him if he was okay. Id. at ¶21. The plaintiff allegedly responded, "No man, my shoulder feels like it's been dislocated and my ankle is on fire!" Id. at ¶22. The plaintiff states that Mathews simply said, "Okay" and then he, Burgess and the two officers left the room, leaving the plaintiff in the same position in the restraint chair. Id. at ¶23. According to the plaintiff, he suffered intense pain from his injuries and because of a lack of circulation from his restrained hands and feet. Id. at ¶24. After what seemed like another hour, Burgess allegedly returned and let the plaintiff out of the restraint chair but left him in the handcuffs. Id. at ¶25. The plaintiff states that he tried to walk but then collapsed in pain from his right ankle, right shoulder and his wrists. Id. at ¶26.

The plaintiff alleges that, while still handcuffed behind the back, someone took him in a wheelchair to Humphrey (a nurse), and that he was shaking and crying from pain. Id. at ¶27. The plaintiff states that after Humphrey callously asked, "What's wrong with him?", he told her that his shoulder felt like it had been dislocated, his head was pounding, his wrist might be broken, he might have re-ruptured his Achilles tendon and he needed something to treat his intense pain. Id. at ¶¶28-29. According to the plaintiff, his shoulders were bloodied and bruised, his "right shoulder was considerably

red, swollen and inflamed, there was also a noticeable lump and gash on his forehead, blood from his nose and mouth with swollen lips, and gashes throughout his body, while *still handcuffed behind the back*." Id. at ¶30. Humphrey alleged wiped some of the blood from a few different areas of the plaintiff and dismissed him. Id. at ¶31. He states that Burgess and Hoskins escorted him, in a wheelchair, to his cell. Id.

The plaintiff alleges that when uncuffed at his cell door, he was in severe pain and he fell unconscious to his cot for several hours and he did not receive lunch that day (because he was unconscious when it came, and he was not given a lunch later). Id. at ¶¶32-33. He says that the next morning (August 7, 2020), he asked a nurse if he would receive anything for his pain and she told him to write a medical slip to be seen and that he was not currently on a schedule to see the doctor. Id. at ¶33. The plaintiff states that he wrote multiple medical slips and three days later (August 10, 2020), Buboltz and John Doe 1 arrived at his cell to escort him to "sick call." Id. at ¶34. According to the plaintiff, he told the officers he could not lift his arm into his sleeve because he was in so much pain and Buboltz replied, "fuck it less work for us then, I'll just put down that you refused," and left the unit. Id. The plaintiff states that Humphrey saw him later that day and that no medical treatment was provided but that he was put on the list to be seen by the doctor, Trotman. Id. at ¶36.

The plaintiff alleges that ten days later (August 20, 2020), he saw Trotman for his pain and she commented on a new lump on the lower back

6

side of his right hand above his right wrist as well as scars on his wrists from the tight handcuffs. Id. at ¶37. Trotman allegedly told the plaintiff she would prescribe him three, 325 mg. tablets of acetaminophen twice a day, but later that day she changed the order to ten 325 mg. tablets a week for four weeks. Id. at ¶38. According to the plaintiff, he did not learn of this change for two days. Id. at ¶39. He says his order ran out four days after his first dose and was not refilled until about a week and half later (September 5, 2020) and during the waiting period he had nothing to relieve the pain. Id. at ¶40. The plaintiff alleges that he consistently tried to notify Trotman that the order for pain relief was deficient, but nothing was done to mitigate his pain. Id. at ¶41.

The plaintiff alleges that on September 9, 2020, during the second week of his prescribed acetaminophen and when he still had a lot of pain, he paged the control desk to ask Reuter to bring him a pack of his acetaminophen. Id. at ¶42. He says that Reuter flatly denied him the only pain relief to which he had access. Id. at ¶43.

The plaintiff claims that Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman *and Buboltz*[1] used physical force against him without need or provocation and/or failed to intervene to prevent the misuse of force, in violation of the United States Constitution. Id. at ¶49. He also claims that these defendants committed the tort of assault and battery under Wisconsin law. Id. The plaintiff claims that Burgess, Holzhueter, Cowell,

---

[1] The plaintiff did not include Buboltz in initial description of the incident in his complaint allegations. The court presumes this was an oversight.

7

Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman and Buboltz used physical force to abusively strip search him in front of an officer of the opposite sex and that they intended to humiliate and inflict psychological pain on him, in violation of his constitutional rights and unspecified Wisconsin state law. Id. at ¶50. The plaintiff claims that Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman and Buboltz used unnecessary physical force to restrain him in the restraint chair, which they knew causes pain due to its restrictive and abnormal positioning of appendages and that they did this to paint a false narrative that would justify their use of force. Id. at ¶51.

The plaintiff claims that Burgess's and Mathews's failure to remove the plaintiff from the restraint chair after he complained to them that he was in severe pain constituted deliberate indifference to a serious medical need. Id. at ¶52. The plaintiff claims that the failure of Humphrey to provide him reasonable medical care constituted deliberate indifference. Id. at ¶53. The plaintiff claims that Buboltz and John Doe 1 acted with deliberate indifference to his condition when they failed to use reasonable judgment in escorting him to the health services unit to get the appropriate and needed medical attention. Id. at ¶54. The plaintiff claims that Reuter was deliberately indifferent to his untreated pain when she denied him his pain medication. Id. at ¶55. The plaintiff claims that Trotman was deliberately indifferent to his serious medical need by not providing him with adequate pain relief and refusing to provide him with pain relief in subsequent visits. Id. at ¶56.

The plaintiff seeks injunctive relief, compensatory damages and punitive damages. Id. at ¶¶57-62.

C.  Analysis

The Fourteenth Amendment applies to excessive force claims brought by pre-conviction detainees and the standard is solely objective. Hardeman v. Curran, 933 F.3d 816, 822 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 576 U.S. at 396-97. The plaintiff has stated an excessive force claim against defendants Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman and Buboltz based on allegations that they used unnecessary physical force against him, failed to intervene in the use of force and used unnecessary force to place him in the restraint chair.

The court also will allow the plaintiff's state law claim of assault and battery to proceed under the court's supplemental jurisdiction. See 28 U.S.C. §1367(a). Under Wisconsin law, a battery or assault and battery is an unauthorized intentional contact with another. See Craig v. Klemmer, No. 17-CV-288-JPS, 2017 WL 1067778, at * (E.D. Wis. March 21, 2017) (citing McCluskey v. Steinhorst, 45 Wis. 2d 350, 357 (Wis. 1970)). At this early stage, the plaintiff's allegations that Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow, Hedman and Buboltz used unnecessary physical force against him state a claim under state law.

A pretrial detainee's claim of an unreasonable search is reviewed under the Fourth Amendment. Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, (2012) (applying the Fourth Amendment to a strip search of a pretrial detainee). This is because a detainee is not a convicted person who must allege cruel and unusual punishment as required under the Eighth Amendment. Under the applicable Fourth Amendment standard, the detainee must successfully allege only that the search was unreasonable. This requires only an objective analysis rather than the dual objective and subjective analysis required under the Eighth Amendment. See Henry v. Hulett, 969 F.3d 769, 781 (7th Cir. 2020). The court presumes that the plaintiff does not know which officers conducted the search because he says officers had their knees on his shoulder and neck as he was laying on the ground. At this stage, the plaintiff may proceed on a claim against Burgess, Holzhueter, Cowell, Newkirk, Yang, Domurat, Hoskins, Pankow and Hedman and Buboltz based on the search.

A §1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. James v. Hale, 959 F.3d 307, 318 (7th Cir. 2020) (citing Miranda v. Cty. of Lake, 900 F.3d 335, 346-47 (7th Cir. 2018)). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. Id. (citing Miranda, 900 F.3d at 352). The plaintiff bears the burden to demonstrate objective unreasonableness, and he must make a two-part showing. Id. First, he must show that the defendants

10

acted purposefully, knowingly or recklessly when considering the consequences of their response to the medical condition at issue in the case. Id. (citing McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. Id. The plaintiff states a claim against Burgess and Mathews based on allegations that they did not remove him from the restraint chair after he complained that he was in severe pain. The plaintiff may proceed on a claim against Humphrey for allegedly not providing him with adequate medical care. The plaintiff may proceed on a medical care claim against Buboltz and John Doe for allegedly refusing to escort the plaintiff to get medical attention because he could not lift his arm. The plaintiff may proceed against Reuter for refusing to give him his pain medication without explanation. And he may proceed against Trotman for failing to provide adequate medical care to treat his pain.

Once the named defendants have filed a responsive pleading to the complaint, the plaintiff will need to use discovery to identify the John Doe defendant.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Lt. Burgess, CO Holzhueter, CO Cowell, CO Newkirk, CO Domurat, CO Hoskins, CO Pankow, CO Hedman, CO

11

Buboltz, CO Reuter, Dr. Enid Trotman, Jean Humphrey, Jim Mathews and CO Yang under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$275.46** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 25th day of January, 2023.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**